IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| H.G. Roebuck & Son, Inc. | * |
| Appellant, | * |
| v. | * Civil Action No.: RDB-11-0157<br>Bankruptcy No.: 10-18241 |
| Alter Communications, Inc. | * |
| Appellee. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case is before this Court on two consolidated appeals noted by Appellant H.G. Roebuck & Son, Inc. ("Roebuck"). Specifically, Roebuck challenges (1) the denial by the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") of Roebuck's motion to terminate the exclusive right of Alter Communications, Inc. ("Alter") to propose a Chapter 11 plan under Section 1121(e) of the Bankruptcy Code (the "Exclusivity Appeal") (Civil Action No. RDB-11-0053); and (2) the Bankruptcy Court's confirmation of a Chapter 11 plan of reorganization proposed by Alter over the objection of Roebuck (the "Confirmation Appeal") (Civil Action No. RDB-11-0157). *See* Feb. 1, 2011 Order Consolidating Appeals, ECF No. 8. The two appeals are related and are centered upon an analysis of the Supreme Court's opinion in *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999). Roebuck contends that had the Bankruptcy Court properly followed the dictates of *203 North LaSalle*, it would not have denied Roebuck's motion to terminate the exclusive right of Alter to propose a Chapter

1

11 plan, and in addition, could not have confirmed Alter's reorganization plan. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a) as Roebuck's appeal arises from the final order entered by the Bankruptcy Court.[1] The parties have fully briefed the issues, and this Court held a hearing on May 20, 2011 pursuant to Local Rule 105.6 (D. Md. 2010) and Federal Rule of Bankruptcy Procedure 8012. For the reasons stated below, the Order of the United States Bankruptcy Court is REVERSED and this case is REMANDED to the Bankruptcy Court with instructions to enter an order allowing competing reorganization plans to be filed.

## BACKGROUND AND PROCEDURAL HISTORY

The Debtor, Alter Communications, Inc. was formed in 1919 and publishes the Baltimore Jewish Times, Style Magazine, Chesapeake Life, and other custom publications. Alter is owned, operated, and managed by the Buerger family. The Appellant in this Case, Roebuck, is Alter's longtime printer. Although Roebuck has been Alter's printer for over fifty years, the relationship between the two companies has soured significantly in recent years. Indeed, Alter's Chapter 11 filing was precipitated by a judgement in favor of Roebuck entered against Alter for unpaid printing bills. In 2009, Roebuck sued Alter in the Circuit Court for Baltimore County for breaching an exclusive printing contract and sought over $1.7 million in damages. In December 2009, the Circuit Court entered partial summary

---

[1] With regard to the Exclusivity Appeal, Alter challenges this Court's jurisdiction on the ground that it does not arise from a final order issued by the Bankruptcy Court. However, as will be discussed *infra*, this Court concludes that as a result of the Bankruptcy Court's confirmation of Alter's reorganization plan, it has jurisdiction to consider the Exclusivity Appeal as well as the Confirmation Appeal.

judgment in favor of Roebuck, and on April 8, 2010, entered a final money judgment against Alter in the amount of $362,125.84.

On April 14, 2010, Alter filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. As a "small business debtor" as defined under 11 U.S.C. § 101(51D) of the Bankruptcy Code, Alter had the exclusive right to file a reorganization plan within 180 days of the filing of its Chapter 11 petition. *See* 11 U.S.C. § 1121(e)(1). Exactly 180 days later, on October 11, 2010, Alter filed its reorganization plan (the "Chapter 11 Plan"). *See* Chapter 11 Plan, ECF No. 2-7.

The Chapter 11 Plan sets forth the methods and mechanisms by which Alter plans to pay back its creditors, and provides for twelve separate classes of claims and interest, not all of which are relevant to this appeal. Briefly summarized, most of Alter's creditors will be paid in full, including Wells Fargo Bank, National Association ("Wells Fargo"), the single largest creditor, and Ronnie and Andrew Buerger, two current shareholders who collectively own over sixty percent of Alter Communications, Inc. *See* Chapter 11 Plan § 4.02-4.06, ECF No. 2-7. According to the Chapter 11 Plan, two classes of creditors will not be paid in full. Class 10 consists of all unsecured claims in amounts under $2,500. Those claimants are to be paid fifty percent of the amount of their claims within 120 days after the effective date of the Chapter 11 Plan. *Id.* § 4.10. Class 11 consists of all general unsecured claims not otherwise included in the other classes. There are four claimants in Class 11, of which Roebuck is the largest. Roebuck's claim of $362,125.84 represents 92 percent of the dollar value of the Class 11 claims. The Chapter 11 Plan proposed by Alter provides that holders

3

of Class 11 claims are to be paid 85 percent of Alter's net cash[2] in annual installments every April 30 from 2012 through 2016. *Id.* § 4.11 Alter projected that holders of Class 11 claims will receive a total distribution equal to approximately sixteen percent of their claims over the life of the Chapter 11 Plan.[3]

Notwithstanding the relatively small distribution Roebuck is projected to receive, the real crux of this litigation concerns the distribution and ownership of stock in the reorganized Alter. Briefly, the Chapter 11 Plan mandates that Alter's existing shareholders (the Buerger family) must own at least 85 percent of the equity in the reorganized company, and Class 11 claimants have the opportunity to hold the remaining 15 percent. *Id.* § 5.02. Moreover, the Chapter 11 Plan specifies that the aggregate purchase price for all equity interests in the reorganized Alter would be $14,000.[4] In addition, if Roebuck does exercise its option to buy any shares in the company, then the claim of Andrew Buerger, the CEO of Alter, in the amount of $42,000, will become immediately due and payable. *Id.* § 4.06 ("[I]f at any time before December 1, 2015, [Andrew] Buerger and/or members of his immediate family do not own all of the equity interests in the reorganized Debtor, then all of the unpaid principal and accrued interest on Mr. Buerger's Class 6 claim shall become immediately due and payable."). Because debt service is subtracted from distributable funds to calculate the

---

[2] The Chapter 11 Plan sets forth the following formula for calculation of net cash: net income minus capital expenses minus debt service minus taxes.

[3] It should be noted that Alter's projection with respect to Class 11 claimants assumes that Roebuck's claim will be allowed in full, and that Alter does not incur any unanticipated expenses. In its brief, Alter notes that legal fees for an appeal are such an unanticipated expense. As Alter has undoubtedly incurred legal fees in connection with this appeal, it is likely that holders of Class 11 claims will receive less than sixteen percent of their claims as projected in the Chapter 11 Plan.

[4] Shortly before the confirmation hearing, the aggregate purchase price was revised upward from $14,000 to $41,000, but the Chapter 11 Plan has not been updated to reflect this change.

distribution to Class 11 claimants, should a Class 11 claimant choose to purchase any interest in the reorganized Alter, that decision would further reduce the distributions to holders of Class 11 claims.

In light of its relatively paltry projected distribution, and its inability to own more than 15 percent of the reorganized Alter, Roebuck objected to Alter's Chapter 11 Plan. On October 14, 2010, Roebuck filed a motion to terminate the exclusive period, requesting that the Bankruptcy Court allow competing plans to be filed by the parties in interest. Roebuck argued that Alter's Chapter 11 Plan was not confirmable in light of the Supreme Court's opinion in *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999). Judge James F. Schneider of the Bankruptcy Court heard oral argument on Roebuck's motion and denied it from the bench. Although Roebuck's motion was based on an argument that the Supreme Court's *LaSalle* case mandated termination of exclusivity, the Bankruptcy Court denied the motion without deciding whether *LaSalle* indeed mandated termination of exclusivity. *See* Tr. Dec. 1, 2010 Hr'g 31-35, ECF No. 10 ("The Court is not in a position at this time to determine what the reasonable method of satisfying the requirements of *LaSalle* with respect to new value are.").

Two weeks after Roebuck's motion was denied, the Bankruptcy Court held a confirmation hearing where it ultimately confirmed Alter's Chapter 11 Plan. During the confirmation hearing, a certified public accountant was called by Alter to provide his estimate of the value of the reorganized debtor. Although he previously estimated the value of the company to be $14,000, the expert revised his estimate to $41,000 after taking into account the fact that the Chapter 11 Plan mandates that the reorganized company only

distribute 85 percent (as opposed to 100 percent) of its profits to its creditors. As a result, under Alter's Chapter 11 Plan, the Buerger family would have to pay 85 percent of $41,000, or $34,850 to maintain control of the company. Andrew Buerger, Alter's CEO, testified at the hearing that the potential market for a company such as Alter consists of members of the publishing industry, affluent and influential members of the Baltimore Jewish community, and various Jewish organizations. *See* Alter Br. at 24, ECF No. 13. Mr. Buerger also testified that prior to filing for Chapter 11 bankruptcy protection, he contacted approximately 15 potential buyers for the company, and received no interest. During the period between the December 1, 2010 hearing regarding Roebuck's motion to terminate exclusivity and the December 15, 2010 confirmation hearing, Alter placed eight advertisements in various print media outlets purportedly soliciting interest in the company.

After hearing the expert testimony and the arguments made by the parties, Judge Schneider confirmed the Chapter 11 Plan from the Bench. *See* Tr. Dec. 16, 2010 Hr'g 84-90, ECF No. 12. Again, Roebuck argued that the plan was unconfirmable as a result of the Supreme Court's *LaSalle* opinion, but Judge Schneider found that Alter's Chapter 11 Plan was sufficient under *LaSalle*. The Bankruptcy Court entered its order confirming the plan on December 21, 2010.

On December 17, 2010, Roebuck noted its appeal of the earlier order of the Bankruptcy Court denying its motion to terminate exclusivity. On December 30, 2010, Roebuck noted its appeal of the confirmation order. This Court, by order of February 1, 2011 consolidated the two appeals. *See* Order, ECF No. 8.

## STANDARD OF REVIEW

This appeal is brought pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure. On appeal from the Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*. *In re Merry-Go-Round Enterprises, Inc.,* 400 F.3d 219, 224 (4th Cir.2005); *In re Kielisch,* 258 F.3d 315, 319 (4th Cir.2001). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). An abuse of discretion standard applies in the review of the Bankruptcy Court's ultimate application of law to fact. "An abuse of discretion exists where the [lower court's] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 470 (3d Cir.1998) (quoting *ACLU v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1476 (3d Cir.1996)) (internal quotation omitted). The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. *See* Fed. R. Bankr.P. 8013; *see also In re White,* 128 Fed. Appx. 994, 999 (4th Cir.2005); *Suntrust Bank v. Johnson,* 2006 U.S. Dist. LEXIS 87622, at *6, 2006 WL 3498411 (D.Md. Dec. 4, 2006).

## ANALYSIS

As previously noted, Roebuck has appealed the Bankruptcy Court's denial of its motion to terminate exclusivity as well as the court's confirmation of Alter's Chapter 11

Plan. As both appeals essentially concern the same issues and legal analysis, they will be considered together.

**I. Jurisdiction**

As a preliminary matter, Alter challenges this Court's jurisdiction to entertain the Exclusivity Appeal. Under 28 U.S.C. § 158(a) this Court has jurisdiction to hear bankruptcy appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees increasing or decreasing the time periods referred to in Section 1121(d) of the Bankruptcy Code; and (3) with leave of court. As the Bankruptcy Court's order denying Roebuck's motion to terminate exclusivity did not increase or decrease the time period for Alter to file a reorganization plan, and the court did not grant leave for such an appeal, Alter essentially argues that because the Bankruptcy Court simply denied Roebuck's motion, that order did not rise to the level of a final order or decree. However, it is well established that the entry of an order confirming a Chapter 11 plan "is an event comparable to the entry of a final judgment in an ordinary civil litigation" and renders previously unfinalized interlocutory orders final for appeals purposes. *In re American preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001); *see also In re Farmland Indus., Inc.*, 397 F.3d 647, 650 (8th Cir. 2005) ("Thus, even if the ruling on appeal was not final when issued, it is now incorporated in the plan of reorganization, which is a final order."); *In re Interwest Business Equipment, Inc.*, 23 F.3d 311, 314-15 (10th Cir. 1994). Therefore, the Bankruptcy Court's order confirming the Chapter 11 Plan proposed by Alter is a final order and renders its previous order denying Roebuck's

motion to terminate exclusivity final as well. As a result, this Court has jurisdiction to consider both appeals.[5]

## II. The Absolute Priority Rule

For a court to confirm a chapter 11 plan of reorganization, the plan must satisfy sixteen requirements set forth in 11 U.S.C. § 1129(a). Of particular importance is requirement (8) which requires that all classes of claims either accept the plan or be unimpaired. Notwithstanding this requirement, if a class of creditors does not accept a chapter 11 plan of reorganization, the plan may still be confirmed by a court through the aptly named "cramdown" procedure for imposing a plan on a dissenting class. *See* 11 U.S.C. § 1129(b). There are two requirements for a cramdown: (1) all requirements under § 1129(a) must be met (with the exception of § 1129(a)(8)); and (2) "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). Such a plan is fair and equitable only if the value of the claim is paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan *on account of* such junior claim or interest any property," § 1129(b)(2)(B)(ii) (emphasis added). The latter condition is commonly referred to as the "absolute priority rule," and serves as the basis for Roebuck's appeal in this case.

Here, the rejecting class of unsecured claims is Class 11, which consists primarily of Roebuck's claim. Because Roebuck has rejected the plan and its claim will not be paid in full, the absolute priority rule requires that the Buerger family may not retain their equity

---

[5] Alter does not contest this Court's jurisdiction to review the Bankruptcy Court's confirmation of Alter's Chapter 11 Plan.

interest in the company simply "on account of" the fact that they owned those interests prior to filing for Chapter 11 protection. The issue, therefore, is whether the equity interests the Buerger family will receive under the Chapter 11 Plan are "on account" of their prior ownership of the company, or rather are "on account" of the $34,850 (new value) they would be required to pay for an 85 percent ownership position in Alter Communications.

This question concerns what has been alternatively termed the new value corollary or new value exception to the absolute priority rule. The new value corollary is a common law construct that is premised on the idea that shareholders in a company undergoing Chapter 11 reorganization may, under certain circumstances, retain their interest in the company not as a result of their prior ownership, but because they inject new value into the entity. The Supreme Court examined the contours of the new value corollary to the absolute priority rule most recently in *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 444-49 (1999).

In *LaSalle*, Bank of America National Trust and Savings Association (the "Bank") issued a loan to 203 North LaSalle Street Partnership (the "Partnership") that was secured by a mortgage on the Partnership's principal asset, a Chicago office building. *Id.* at 438-40. When the Partnership defaulted on the loan, the Bank began foreclosure proceedings. The Partnership filed for Chapter 11 relief, and its proposed reorganization plan contained a provision whereby only former equity holders could contribute new value in exchange for complete ownership in the reorganized entity. The Bank rejected the plan, and the partnership resorted to the cramdown process for imposing a plan on a dissenting class. *Id.* at 440.

The Court framed the issue in the case as "whether a debtor's prebankruptcy equity holders may, over the objection of a senior class of impaired creditors, contribute new capital and receive ownership interests in the reorganized entity, when that opportunity is given exclusively to the old equity holders under a plan adopted without consideration of alternatives." *Id.* at 437. Without explicitly ruling that there even was such a thing as a new value corollary or exception to the absolute priority rule, the Court concluded that the Partnership's plan was "doomed . . . by its provision for vesting equity in the reorganized business in the Debtor's partners without extending an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan." *Id.* at 454. In essence, the Court held that a debtor's prebankruptcy equity holders may not, over the objection of creditors, contribute new capital and receive ownership in the debtor's reorganized entity unless the reorganized entity has been subjected to some sort of market valuation.[6]

In reaching this decision, the Court first determined that a Chapter 11 reorganization plan's grant of an exclusive option to purchase a debtor's new equity interests on terms fixed by the debtor was valuable "property." *Id.* at 454-55. Next, after concluding that the grant of an exclusive option only to old equity holders was a transfer of valuable property, the Court asked the question "why old equity alone should obtain it, not to mention at no cost whatever." *Id.* at 456. The Partnership argued that the exclusive option should be granted

---

[6] This Court notes that the Supreme Court in *LaSalle* cited with apparent approval the opinion of the United States Court of Appeals for the Fourth Circuit in *Travelers Insurance Company v. Bryson Properties XVIII*, 961 F.2d 496 (4th Cir. 1992) for the proposition that market testing is required when old equity proposes a reorganization plan that vests them with the exclusive opportunity to purchase the new equity in the reorganized debtor. *See LaSalle*, 526 U.S. at 443.

11

to old equity in order to induce old equity to participate in the new value transaction. The Court, however, rejected this argument and reasoned that:

> [T]his just begs the question why the opportunity should be exclusive to the old equity holders. If the price to be paid for the equity interest is the best obtainable, old equity does not need the protection of exclusiveness (unless to trump an equal offer from someone else); if it is not the best, there is no apparent reason for giving old equity a bargain. There is no reason, that is, unless the very purpose of the whole transaction is, at least in part, to do old equity a favor. And that, of course, is to say that old equity would obtain its opportunity, and the resulting benefit, because of old equity's prior interest within the meaning of [the absolute priority rule].

*Id.* The Court clarified that all plans affording old equity the exclusive opportunity to purchase new equity in the reorganized debtor were not doomed, but only those plans that were not subjected to market valuation: "Hence it is . . . the exclusiveness of the opportunity, with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals, [that] renders the partners' right a property interest extended 'on account of' the old equity position and therefore subject to . . . objection." *Id.*

So, at base, *LaSalle* commands that where a reorganization plan gives old equity the exclusive right to purchase shares in the reorganized debtor, the price paid by old equity must be subject to market valuation. Despite this clear holding, the Supreme Court left open what exactly constitutes "market valuation." The Court stated: "Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here." *Id.* at 458.

It is precisely this ambiguity that the parties in the present case have seized upon. Roebuck contends that the Supreme Court gave two discrete options by which to satisfy the

market valuation requirement—either allow for competing reorganization plans, or allow for competitive bidding for the same equity interests being retained by the old equity holders. Roebuck argues that because the Bankruptcy Court did not allow Roebuck to file a competing reorganization plan, and did not mandate competitive bidding for the equity in the newly reorganized Alter Communications, *LaSalle* is not satisfied, and the Chapter 11 Plan therefore violates the absolute priority rule.

Alter, on the other hand, contends that *LaSalle* should not be read so strictly and its demand for "market valuation" may be satisfied in ways other than the two methods prescribed by the Supreme Court. Specifically, Alter contends that any method of market valuation is sufficient so long as the bankruptcy judge is satisfied that the market has been tested. Alter Br. at 35 ("The Supreme Court left the decision as to whether the market was sufficiently tested to the bankruptcy courts evaluating debtors' plans.").

In clarifying its position, Alter argues that a two-part analysis is required to determine whether *LaSalle's* market valuation requirement has been met. Alter argues that the debtor must first demonstrate to the bankruptcy court that it has targeted the appropriate market, and second, demonstrate that it tested the market. *Id.* at 36. Alter contends that it has satisfied both prongs of this analysis but provides no case law to support its position, and the text of the *LaSalle* opinion provides no mention of a two part analysis. Indeed, Roebuck points out, and this Court agrees, that while Alter's two part analysis may very well be workable, it is predicated on some sort of actual market testing—of which there was none in this case.

13

Alter's method of "testing" the market in this case simply did not meet the requirements clearly established by the Supreme Court. *LaSalle* commands that when a reorganization plan is proposed by a debtor during the exclusive period and gives old equity holders the opportunity to purchase equity in the reorganized debtor, *actual* market testing is required of the stock in the reorganized debtor. *See LaSalle*, 526 U.S. at 457 (emphasis added). Indeed, the Court remarked that even if the old equity holders in a new value transaction could somehow convince the bankruptcy judge that the price they proposed to pay for the new equity was "top dollar," that determination would nevertheless depend entirely on the judgment of that particular judge. *Id.* The Court dismissed judicial valuations as inferior, and clearly stated "the best way to determine value is exposure to a market." *Id.* Moreover, the Court noted that self-determination of value by the parties is superior to judicial evaluations no matter how conscientiously the bankruptcy judge considers the matter. *Id.* at n.27. Specifically, the court remarked that "it was, after all, one of the [Bankruptcy] Code's innovations to narrow the occasions for courts to make value judgments," *Id.* at 457, and that in codifying the Chapter 11 procedures, "Congress adopted the view that creditors and equity security holders are very often better judges of the debtor's economic viability and their own economic self-interest than courts, trustees, or the SEC . . . ." *Id.* at n.28.

In the present case, despite Alter's protestations to the contrary, this Court can find no evidence that the market for the reorganized[7] Alter Communications has in any

---

[7] Alter has produced evidence that prior to Alter's filing of its petition for Chapter 11 protection, its CEO, Andrew Buerger, reached out to various entities potentially interested in purchasing or investing in Alter Communications. However, as *LaSalle* makes clear, it is not the market for the

meaningful way been tested. An expert's valuation of a company, of the type conducted in this case, simply cannot suffice as it does not expose the stock in the reorganized debtor to the actual market, as *LaSalle* requires. *See South Highland Ave. LLC v. Transcom Terminals, Ltd.* No. JFM-03-3498, (D. Md. March 8, 2004) (in overturning the Bankruptcy Court's confirmation of a reorganization plan similar to the one in this case, this Court held that *LaSalle* clearly requires market testing of the value of the reorganized debtor, and that an expert's opinion will not suffice—actual exposure to a market is necessary). Because no other creditor was permitted to file a competing reorganization plan, any analysis of whether the expert's valuation is sufficient to constitute a market test would necessarily be conducted in a vacuum by the court—precisely what *LaSalle* cautions against. Indeed, if the Bankruptcy Court simply allowed Roebuck to file a competing plan, and the creditors found that plan to be inferior, they could still vote for Alter's original plan, and *LaSalle* would have been satisfied. In sum, this Court cannot find that an expert's opinion regarding the value of the reorganized Alter Communications can substitute for true exposure to a market.

Similarly, although there is evidence that Alter's CEO placed advertisements in various local publications purportedly advertising a sale of Alter Communications, those advertisements are so cryptic and provide so little information[8] that they cannot be considered adequate market tests under *LaSalle*. *See generally* ECF No. 2-17. In addition, the advertisements were place well after Alter's Chapter 11 Plan was filed and voted on—indeed,

---

debtor's shares prior to reorganization that must be tested, but rather, the market for the shares post reorganization. A reorganized debtor, with its debts discharged, may or may not be of greater value to the relevant market than one that cannot pay its obligations and is considering filing for Chapter 11 protection.

[8] For example, the majority of the advertisements contained only the following text: "Weekly publication ISO buyers/investors (410) 429-7154."

the advertisements were placed only after the Bankruptcy Court denied Roebuck's motion to terminate exclusivity and after Alter represented to the Bankruptcy Court that it had indeed engaged in significant activities to test the market for the Alter stock. Placing eight bare-bones advertisements, with no accompanying information that would actually be useful to a potential investor or purchaser, is simply not enough to show, under *LaSalle*, that the equity in the reorganized debtor has undergone market testing.

Having determined that the Chapter 11 Plan confirmed by the Bankruptcy Court violates the absolute priority rule, the question becomes what remedy to impose. *LaSalle* mandates market valuation of the new equity in the reorganized debtor and provides two potential solutions: competitive bidding or termination of exclusivity and the opportunity to file competing bids. The latter solution ensures compliance with the principles of the *LaSalle* case.

This Court finds the opinion of the United States Bankruptcy Court for the District of Massachusetts, *In re Situation Management Systems, Inc.*, 252 B.R. 859 (Bankr. D. Mass. 2000), to be instructive. In that case, the Bankruptcy Court considered a plan filed by the existing equity holders whereby they would retain the equity in the reorganized debtor. The Bankruptcy Court determined that the act of filing a new value plan was sufficient cause to terminate the old equity holders' exclusive right to file a reorganization plan under the Bankruptcy Code. *Id.* at 865. Moreover, the court noted that where a party (other than the old equity holders) is interested in acquiring the debtor:

> [T]he opportunity to offer a competing plan is a preferable procedural mechanism . . . . Because an approved disclosure statement is a prerequisite to the circulation of a plan and the solicitation of votes, creditors will be able to choose which plan they prefer after having been provided with adequate information sufficient for a "hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

*Id.* (citing 11 U.S.C. § 1125(a)(1)).

Here, Roebuck has certainly expressed interest in acquiring at least some of the reorganized Alter Communications, and has in fact represented that it would be willing to pay more than the $41,000 estimated value of the company.[9] As such, this Court concludes that in order to satisfy the absolute priority rule and the Supreme Court's mandate in *LaSalle*, the Bankruptcy Court's confirmation of the Chapter 11 Plan must be reversed and this case must be remanded with instructions to terminate exclusivity and to allow competing reorganization plans to be filed.

The absolute priority rule mandates, and *LaSalle* clarifies, that when old equity seeks to retain its share in a reorganized debtor, the debtor must undergo market valuation. One way to satisfy that requirement is through the termination of exclusivity and by allowing competing reorganization plans to be filed. It will ultimately be up to the creditors to vote on the best reorganization plan, subject to confirmation by the Bankruptcy Court.

---

[9] Notably, Justice Stevens, the lone dissenter in *LaSalle*, concluded that "even if the old stockholders propose to buy the debtor for a fair price, presumably their plan should not be approved if a third party . . . is willing to pay an even higher price." *LaSalle*, 526 U.S. at 466. Here, the fact that Roebuck has represented that it would be willing to pay a higher price than Alter has offered, further confirms the fact that this Chapter 11 Plan cannot be confirmed in light of the absolute priority rule.

# CONCLUSION

For the reasons set forth above, and in the words of the Supreme Court, "the [Bankruptcy] Act calls for testing valuation by a required process that was not followed here." *LaSalle*, 526 U.S. at 457 n.27. Accordingly, the Bankruptcy Court's decision is REVERSED and REMANDED with instructions to enter an Order terminating exclusivity and allowing competing reorganization plans to be considered.

A separate Order follows.


Dated: June 3, 2011                    /s/_____
                                       Richard D. Bennett
                                       United States District Judge